IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Clara H. Bryant, | ) | Civil Action No. 1-05-cv-1352-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| United Parcel Service of America, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on: Defendant United Parcel Service, Inc.'s (hereinafter "UPS")[1] motion for summary judgment, filed on January 20, 2006; and UPS' motion to strike affidavits, filed on February 14, 2006. The matter has been fully briefed and this court heard oral arguments of counsel on August 14, 2006. After having considered the pleadings, briefs, evidence of record, and oral arguments of counsel, the court finds, for the reasons set forth below, that the defendant's motion for summary judgment should be granted. In light of this ruling, UPS' motion to strike affidavits is rendered moot.

**I. Background Facts and Procedural History**

The undisputed facts, in the light most favorable to the plaintiff, as the non-moving party, are as follows: In or around October 2004, Plaintiff Clara Bryant contracted through an online auction service to sell two (2) Rolex watches to a Mr. Michael Lancer in Brooklyn, New York. Prior to this transaction, Ms. Bryant had never met, or conducted any business with Mr. Lancer.

On October 19, 2004, Ms. Bryant, through her agent and daughter-in-law Lisa Bryant,

---

[1] The court notes that UPS has indicated in its prior pleadings that the named defendant, United Parcel Service of America, Inc., is not a proper party to this action. UPS states that the plaintiff's claims in this action are based upon a contract between the plaintiff and United Parcel Service, Inc., an Ohio corporation, which has responded to the plaintiff's claims in this action.

contracted with UPS to deliver the watches to Mr. Lancer at 305 Jerome Street, FL 2, Brooklyn, NY 11207. Ms. Bryant further directed that UPS deliver the Package C.O.D. ("Collect on Delivery") and requested that UPS collect Thirty-Five Thousand One Hundred Ninety-Nine Dollars and Forty-Three Cents ($35,199.43) from Mr. Lancer upon delivery (representing the $35,000 sales price for the watches plus the following delivery-related costs: $61.90 for the Next Day Air delivery charge; $131.65 for Excess Value Insurance (hereinafter "EVI") in the amount of $35,000 to protect her shipment against loss or damage while in transit; and $5.88 for Fuel Surcharge).

Significantly, prior to shipping the watches, Lisa Byrant reviewed the UPS policies governing shipment of C.O.D. packages before entering into the shipping contract.[2] After paying the above noted shipping fees, Lisa Bryant received a shipment receipt that included the phrase "*Collect on Delivery $35,199.43 Guaranteed*." On the morning of October 20, 2004, a UPS delivery driver successfully delivered the package to the individual specified by the plaintiff at the address specified by the plaintiff. The UPS delivery driver also collected a Citibank cashier's check made payable to the plaintiff in the amount specified by her. The plaintiff then deposited said check in People's Community Bank of Aiken County, South Carolina. The cashier's check was dishonored by the purported maker, Citibank, inasmuch as it was a counterfeit cashier's check. Plaintiff demanded that the defendant pay the $35,199.43, which the defendant refused to pay. Thereafter, on March 22, 2005, the plaintiff brought this action in the South Carolina Court of Common Pleas for the Second Judicial Circuit in Aiken County. The defendant removed the action to this court on May 9, 2005.

---

[2] This fact is gleaned from Response No. 12 of the Plaintiff's Responses to Defendant's First Set of Requests for Admissions, which is attached as Exhibit # 3 to the Defendant's Motion for Summary Judgment [Entry # 41], wherein the plaintiff Denied "that Lisa Bryant, prior to shipping Plaintiff's Package, did not review the written terms governing shipment of Collect on Delivery packages with UPS.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

## III. Discussion

As noted above, the defendant filed a motion for summary judgment on January 20, 2006. The defendant contends that it has disclaimed and that the plaintiff has assumed all liability for risk of loss resulting from a forged instrument being tendered for payment of C.O.D. deliveries. Defendant

primarily relies upon the applicable UPS Tariff, which the parties agree form the basis of the shipping contract. Plaintiff however asserts that the contract between her and UPS consists not only upon the terms of the Tariff but also includes the terms contained in the shipping receipt delivered to the plaintiff's agent that allegedly "guaranteed" the collection of $35,199.43 upon delivery.

### A) The Terms of the Shipping Contract

The court finds that viewing the facts most favorably for the plaintiff, the terms of the Shipping Contract are indisputable. It is well established by the courts in this state and throughout this country that "the contract between the shipper [Plaintiff] and the carrier [Defendant] consists of the bill of lading and the [applicable] tariff." United Parcel Service v. S.C. Tees, Inc., 508 S.E.2d 34, 36 (S.C. Ct. App. 1998); see also Southern Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336 (1982); Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29 (1936) (finding liability governed by the provisions of the applicable tariff); McCall-Thomas Eng'g Co. v. Federal Express Corp., 81 F.3d 28, 30 (4th Cir. 1996) (same); Sam L. Majors Jewelers v. ABX. Inc., 117 F.3d 922, 930 (5th Cir.1997) (same); Aero Trucking, Inc. v. Regal Tube Co., 594 F.2d 619, 621 (7th Cir. 1979) ("it has long been held that properly published tariffs are incorporated into any agreement between the shipper and carrier"); North American Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233 (2d Cir. 1978) (tariffs "govern not only the nature and extent of [the carrier's] liability, but also the nature and extent of the shipper's right of recovery").

With that in mind, the court notes that in this case, Item 480 of the UPS Tariff, which the parties agree forms the basis of the shipping contract, expressly provides that:

> [a]ll checks or other negotiable instruments (including cashier's checks, official bank checks, money orders, and other similar instruments) tendered in payment of C.O.D.s will be accepted by UPS based solely upon the shipper [Ms. Bryant] **assuming all risk relating thereto including, but not limited to, risk of nonpayment, insufficient funds, and forgery, and UPS shall not be liable upon any such instrument**.

(emphasis added).  Furthermore, Item 537 of the Tariff provides that the EVI purchased by Ms. Bryant would reimburse in the event the Package was lost or damaged during shipment.  However, the court notes that both Lisa Bryant and her husband Joel Bryant allege that unnamed UPS employees stated EVI would protect Ms. Bryant against loss of "any kind."

It is also important to note that under the prevailing law in this Circuit and throughout the country, the plaintiff is charged with constructive notice of the terms and conditions in the applicable tariff, including Items 480 and 537 of the Tariff.  See, e.g. Maislin Indus., U.S. v. Primary Steel, Inc., 497 U.S. 116, 128 n.9 (1990); Sam L. Majors Jewelers, 117 F.3d at 930 ("The carrier need not demonstrate that the customer had actual knowledge of the liability limitations; instead, acceptance and use of the [service] suffices to establish an agreement *prima facie* valid which limits the carrier's liability."); Baker Perkins, Inc. v. Midland Moving & Storage Co., 920 F.2d 1301, 1306 (6th Cir. 1990) (shipper charged with constructive notice of tariff); First Pa. Bank, N.A. v. Eastern Airlines, Inc., 731 F.2d 1113, 1119 (3d Cir. 1984) (tariff and shipping documents constituted constructive notice; "election to ship under a tariff containing limitation of liability provisions suffices to manifest the shipper's acceptance of the valuation, even if it is not embodied in the transportation documents."); White v. Southern Ry. Co., 38 S.E.2d 111, 116 (S.C. 1946) ("the shipper of goods moving in interstate commerce is charged with constructive knowledge of the applicable tariffs").

However, even without this constructive notice, the plaintiff admitted in her Responses to the Defendant's First Set of Requests for Admissions that her agent, Lisa Bryant, reviewed the applicable UPS C.O.D. policies prior to shipping the watches.  Therefore, in this case, the plaintiff had actual notice of the terms and conditions in the applicable tariff.

The court notes that in McCall-Thomas Eng'g. v. Federal Express Corp., the Fourth Circuit, applying a provision similar to Item 480 of the Tariff in this case, held that a shipper assumed the risk

of fraudulent C.O.D. payment despite "suspicious circumstances" surrounding the delivery. Id., 81 F.3d 28 (1996) (affirming summary judgment for carrier). In that case, Plaintiff/shipper McCall-Thomas shipped approximately $85,000 in merchandise C.O.D. to a Mr. Ron Stevens of Medicomp Medical Supplies in California. Id., 81 F.3d at 29. The office complex at the address specified by the shipper was surrounded by a locked gate and neither Ron Stevens nor Medicomp Medical Supplies were listed on the office complex directory. Id., 81 F.3d at 30. After two unsuccessful delivery attempts, an individual contacted Federal Express to ask about the delivery. Id. The merchandise was eventually delivered, outside the locked gates of the office complex, to a different person, Mr. T. Johnson, who presented a cashier's check in an amount greater than the amount requested by the shipper and drawn on a bank in the Fiji Islands. Id. Despite these numerous irregularities, the McCall-Thomas Court granted summary judgment for the carrier, holding that the carrier "fully complied with its contractual obligations by collecting a cashier's check in an amount sufficient to cover the specified C.O.D." Id.

> Applying C.O.D. provisions similar to those in the UPS Tariff, the Fourth Circuit affirmed:
>
> McCall-Thomas **assumed all risk of fraud in connection with [the carrier's] C.O.D. service**. . . . [The carrier's] **unambiguous contractual provisions are to be given effect**. Here, as in the usual case, the shipper was in a far better position to verify the honesty and creditworthiness of its customers; if questions had arisen, the shipper could have insisted on advance or cash payment.

Id. (emphasis added).

Under the terms of the UPS Tariff, this court finds that the plaintiff assumed *all* risks related to C.O.D. payments. Therefore, UPS is not liable for its driver's acceptance of a fraudulent cashier's check. See S.C. Tees, Inc., 508 S.E.2d at 36 (affirming summary judgment dismissal of a shipper's claims for breach of contract and negligence arising from UPS's acceptance of a fraudulent C.O.D. payment, holding that "UPS is not liable because the certified check turned out to be invalid."); see also

Comark, Inc. v. United Parcel Service, Inc., 701 F. Supp. 641, 646 (N.D. Ill. 1988) ("to hold otherwise would call on UPS drivers to be moonlighting law students, skilled in the arcane mysteries of the UCC"); G. D. T. Jewelry, Inc, v. United Parcel Service, Inc., 181 A.D.2d 517, 519 (App. Div. N.Y. 1992) (UPS not liable because tariff clearly established that shipper bore risk of forgery); Wave Electronics v. United Parcel Service, 603 A.2d 143, 145 (N.J. Super. Ct. 1991) (holding as a matter of law that UPS "Tariff Item 480 controls . . . [and that the C.O.D. shipper] incurred all risk attendant to the acceptance by UPS of the invalid check, including the risk of nonpayment."); Shockley v. United Parcel Service, 664 S.W.2d 523, 525 (Ky. Ct. App. 1983) ("UPS is not involved in the banking business and is not in a position to credit or discredit negotiable instruments beyond their duty of examining the face of the check to determine whether it comports to instructions given UPS.").

As mentioned above, the plaintiff seeks to avoid the unambiguous terms of the Tariff regarding C.O.D. payments by relying upon the "guaranteed" language in the shipment receipt. In support of this argument, the plaintiff cites Item 400 of the Tariff which states that:

> The UPS Tariff, the effective UPS Rates and Service Guides and the description of UPS Services at UPS.com, which are incorporated in the Tariff, and the UPS source document for each shipment, together comprise the complete and exclusive agreement of the parties, except as modified by any existing or future written agreement between the parties and may not be contradicted or modified by any oral agreement.[3]

Relying upon this language, the plaintiff asserts that the shipment receipt constitutes a "source document" and the single word "guaranteed" therein constitutes a material term of the shipping contract which assures the plaintiff full payment under any and all circumstances. However, this court finds that the plaintiff's argument is without merit because the shipment receipt cannot constitute a material term

---

[3] As made clear by this provision cited by Ms. Bryant, the oral statements allegedly made by unnamed UPS employees have no legal effect on the shipping contract. See also S.C. Tees, 508 S.E.2d at 37 ("The parties, however, cannot depart from the terms of the bill of lading and the tariff.").

of the shipping contract because it was not provided until *after* the parties entered into the contract, *i.e.*, after Lisa Bryant paid the applicable shipping fees. However, even if the shipment receipt could constitute a material term of the shipping contract, the plaintiff's interpretation of the single word "guaranteed" is inconsistent with the unambiguous provisions in Items 480 (C.O.D.) and 537 (EVI) of the Tariff. Notably, as provided by Item 400 of the Tariff, the very provision relied upon by the plaintiff in her argument, the terms of the Tariff govern in the event of inconsistencies.[4] Thus, even if accepted, the plaintiff's argument does not alter the outcome governed by these unambiguous provisions of the Tariff.

### B) UPS' Performance under the Shipping Contract

The court finds that because it satisfied all of its obligations under the shipping contract, the defendant is not liable for the plaintiff's loss. The defendant properly delivered the package of watches to the individual specified by the plaintiff, at the address specified by her. In addition, the defendant properly collected a facially valid cashier's check that was properly signed, properly made payable to the plaintiff, in the amount specified by her, and drawn on a well known national bank. The court finds that the cashier's check fulfills the minimal definition of a "facially valid cashier's check" established by the Fourth Circuit in McCall-Thomas: "its drawer was a bank and the check was drawn upon the bank's own account." Id., 81 F.3d at 31.

Contrary to the plaintiff's assertion otherwise, this court finds that the UPS driver was not required to ensure the validity of the cashier's check because neither the UPS Tariff nor federal law interpreting tariffs imposes such a burden on carriers. McCall-Thomas, 81 F.3d at 30-31 (holding that

---

[4] Specifically, that provision of Item 400 of the Tariff states that "[t]his Tariff, containing the Rates, Classifications, Rules and Practices, incorporates herein the following described tariffs, and their supplements or loose-leaf page amendments or successive issues thereof, *except to the extent the terms are inconsistent with the terms of this Tariff, in which case the terms of this Tariff govern*." (emphasis added).

carrier "was contractually obligated to collect a facially valid and authorized form of payment, but not to take independent steps to verify the instrument."). Because the defendant fully performed under the shipping contract, the court finds that the plaintiff has no cause of action against the defendant.

## IV.  Conclusion

For the reasons stated above, the defendant's motion for summary judgement [Entry # 37] is hereby **GRANTED**.  The defendant's motion to strike affidavits [Entry # 51] is thereby rendered **MOOT**.

**IT IS SO ORDERED.**

                                         s/ R. Bryan Harwell
                                        R. Bryan Harwell
                                        United States District Judge

August 30, 2006
Florence, South Carolina